IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| HAWAII COALITION FOR HEALTH, | ) ) ) | CIVIL NO. 08-00277 JMS/BMK |
| Plaintiff, | ) ) ) | ORDER: (1) GRANTING DEFENDANTS' MOTION TO DISMISS; AND (2) ORDERING |
| vs. | ) ) ) | PLAINTIFF TO SHOW CAUSE WHY IT SHOULD BE GRANTED |
| STATE OF HAWAII, DEPARTMENT OF HUMAN SERVICES, and LILLIAN B. KOLLER, DIRECTOR STATE OF HAWAII, DEPARTMENT OF HUMAN SERVICES, | ) ) ) ) ) ) ) | LEAVE TO AMEND COMPLAINT |
| Defendants. | ) ) | |
| _____ | ) | |

**ORDER: (1) GRANTING DEFENDANTS' MOTION TO DISMISS; AND (2) ORDERING PLAINTIFF TO SHOW CAUSE WHY IT SHOULD BE GRANTED LEAVE TO AMEND COMPLAINT**

## I. INTRODUCTION

Plaintiff Hawaii Coalition for Health ("Plaintiff" or "HCFH"), a Hawaii non-profit corporation formed to advocate for the rights of Hawaii's healthcare consumers, alleges that the State of Hawaii, Department of Human Services ("DHS") and Lillian B. Koller in her official capacity as Director, State of Hawaii, Department of Human Services (collectively "Defendants") have violated Federal Medicaid Law, the American with Disabilities Act (the "ADA"),

and Hawaii's Patient's Bill of Rights and Responsibilities Act, Hawaii Revised

Statutes ("HRS") Chapter 432E, by awarding two out-of-state managed care

entities contracts to provide services to Hawaii's aged, blind, and disabled

("ABD") Medicaid beneficiaries.

Currently before the court is Defendants' Motion to Dismiss.  Based

on the following, the court GRANTS Defendants' Motion to Dismiss.

## II.  <u>BACKGROUND</u>

DHS operates a managed care program for Medicaid-eligible children

and families known as QUEST pursuant to 42 U.S.C. § 1315.  DHS sought to

extend QUEST through the QUEST Expanded Access ("QExA") program to cover

eligible ABD individuals.  To that end, on October 10, 2007, DHS issued a

Request for Proposals ("RFP") entitled "QUEST Expanded Access (QExA)

Managed Care Plans to Cover Eligible Individuals Who Are Aged, Blind, or

Disabled."  Compl. ¶ 26.  This RFP explained that DHS seeks to transfer all

services for the ABD population to two managed care entities, who will "provide

required service coordination, outreach, improved access, and enhanced quality

healthcare services . . . ."  *Id.*  On February 1, 2008, DHS selected Ohana Health

Plan, Inc. ("Ohana Health") and Evercare, and issued contracts to them with an

effective date of February 15, 2008, and services to begin on November 1, 2008.[1]
*Id.* ¶ 28.

On June 10, 2008, Plaintiff filed its Complaint, asserting that Defendants' award of the QExA program to Ohana Health and Evercare violates Federal Medicaid law, the ADA and HRS Chapter 432E. Specifically, Count I -- brought pursuant to 42 U.S.C. § 1983 -- alleges the following violations of Federal Medicaid law: (1) violation of 42 U.S.C. § 1396u-2(a)(1)(A)(ii) by restricting the RFP award to two entities, *id.* ¶ 27; (2) violation of 42 U.S.C. § 1396u-2(b)(5) for failing to receive proper assurances that the provider networks have sufficient capacity, *id.* ¶ 44; (3) violation of 42 U.S.C. § 1396a(a)(10) for failure to provide required medical services to the ABD population, *id.* ¶ 43; and (4) violation of 42 U.S.C. § 1396u-2(a)(2)(A) by requiring individuals under the age of 19 to enroll in this program. *Id.* ¶ 43. Count II alleges that Defendants have discriminated against the disabled by implementing a program that will not assure access to medical services or guarantee provider availability to this group. *Id.* ¶¶ 68-71; *see also id.* ¶¶ 46-52 (describing provisions of the Social Security Act setting forth standards for equal access and quality of managed care programs). Finally, Count

---

[1] Defendants have represented that the schedule was recently revised so that commencement of service will begin on February 1, 2009. *See* Defs.' Mot. 4. The exact start date of services, however, does not impact this Order.

III alleges a violation of HRS Chapter 432E on the basis that Defendants cannot

demonstrate they can provide access to sufficient numbers and types of providers

to ensure that all covered services will be accessible without unreasonable delay.

*Id.* ¶¶ 53-55, 72-76.  As a result of these alleged violations, Plaintiff seeks an

injunction prohibiting the implementation of the QExA program as currently

contemplated, and mandating a comprehensive, effective plan that ensures

continuity and access to services and care needed by ABD individuals.  *Id.* ¶ 62.

On June 30, 2008, Defendant filed a Motion to Dismiss.  On July 18,

2008, Plaintiff filed an Opposition, and Defendants filed a Reply on July 21, 2008.

A hearing was held on July 28, 2008.  During and after the hearing, the court

raised several issues for supplemental briefing, including whether: (1) Plaintiff has

statutory standing to bring a claim pursuant to 42 U.S.C. § 1983 for violation of

the Federal Medicaid statutes recited in the Complaint;[2] (2) Plaintiff's claim

premised on violation of 42 U.S.C. § 1396u-2(a)(1)(A)(ii) is ripe; and (3) HRS

§ 423E-3 allows for a private cause of action against Defendants.  *See* Doc. No.

39.  Defendants filed their Supplemental Brief on August 8, 2008, Plaintiff filed

---

[2]  The issue of statutory standing is properly reviewed pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See AlohaCare v. Hawaii*, 2008 WL 2605208, at *6 (D. Haw. Jul. 2, 2008) (*citing Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975 n.7 (9th Cir. 2008)).  The court may raise a Rule 12(b)(6) issue sua sponte so long as it provides Plaintiff an opportunity to oppose.  *See Lee v. City of L.A.*, 250 F.3d 668, 683 n.7 (9th Cir. 2001).

their Supplemental Brief on August 20, 2008, and Defendants filed their

Supplemental Reply on August 22, 2008.

## III.  <u>STANDARDS OF REVIEW</u>

### A.      Motion to Dismiss Pursuant to Rule 12(b)(6)[3]

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss

a claim for "failure to state a claim upon which relief can be granted[.]"  When

reviewing a Rule 12(b)(6) motion, a court takes the factual allegations in the

complaint as true and construes them in the light most favorable to the plaintiff.

*Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007); *Lee v. City of L.A.*, 250 F.3d

668, 679 (9th Cir. 2001).  "A district court should grant a motion to dismiss if

---

[3]  In support of their Motion to Dismiss, Defendants provided as Exhibit 1 the RFP, and as Exhibit 2 the Approval of Waiver.  Because the Complaint specifically refers to the RFP, *see* Compl. ¶ 26, the court's consideration of Exhibit 1 does not convert Defendants' Motion into one for summary judgment.  *See Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998) ("A district court ruling on a motion to dismiss may consider documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" (*quoting Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)).  Plaintiff nonetheless argues that the court should not rely on Exhibit 1 because the Complaint referred to only certain portions of the RFP, Plaintiff has not admitted and Defendants have not vouched for the authenticity of the documents, and there may be amendments to the sections upon which Defendants rely.  The court rejects these objections.  Plaintiff chose to rely on the RFP in its Complaint, and the court will not consider only certain portions of a document.  Further, the RFP and the amendments are public documents, available on the State Procurement Office website at http://hawaii.gov/spo2/health/rfp103f/detail.php?rfpID=532.  The court may therefore take judicial notice of the RFP as a "matter of public record."  *See* Fed. R. Evid. 201; *Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001) (stating that the court may take judicial notice of public records without converting a motion to dismiss into one for summary judgment).  The court may similarly take judicial notice of Defendants' Exhibit 2 as a public record.

plaintiffs have not pled 'enough facts to state a claim to relief that is plausible on its face.'" *Williams ex rel. Tabiu v. Gerber Prods. Co.*, 523 F.3d 934, 938 (9th Cir. 2008) (*quoting Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)). "'Factual allegations must be enough to raise a right to relief above the speculative level.'" *Id.* (*quoting Bell Atlantic*, 127 S. Ct. at 1965).

**B.    Ripeness**

"The question of ripeness, like other challenges to a court's subject matter jurisdiction, is treated as a motion to dismiss under Rule 12(b)(1)," and thus, "[i]t is the burden of the complainant to allege facts demonstrating the appropriateness of invoking judicial resolution of the dispute."  15 Moore's Federal Practice § 101.73[1] (2005); *see also Gemtel Corp. v. Cmty. Redevelopment Agency*, 23 F.3d 1542, 1544 n.1 (9th Cir. 1994) (noting that ripeness is properly challenged under Rule 12(b)(1)).

## IV.    <u>ANALYSIS</u>

**A.    Count I: Violation of Federal Medicaid Law**

Defendants argue that the court should dismiss Count I because Plaintiff's allegations -- that Defendants improperly restricted the RFP award to two entities, did not receive proper assurances that the selected entities had complete provider networks at the time of contract, and will require individuals under the age of 19 to enroll in this program -- fail to state a claim upon which

relief can be granted.  Defendants further argue that Plaintiff's allegation that the

contracting entities will be unable to provide required medical services to the

ABD population is not ripe for review.  Based on the following, the court finds

that Plaintiff's claim premised on violation of Federal Medicaid law must be

dismissed.

> **1.**     ***Statutory Standing to Raise Claims Premised on Violations of Federal Medicaid Law***

            None of the statutes that Plaintiff relies on provides for direct actions,

and Plaintiff instead relies upon 42 U.S.C. § 1983 to bring its claims.  Section

1983 creates a cause of action against any person "who, under color of any statute,

ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be

subjected, any citizen of the United States or other person within the jurisdiction

thereof to the deprivation of any rights, privileges, or immunities secured by the

Constitution and laws" of the United States.  "The Supreme Court has held that

only violations of *rights*, not *laws*, give rise to § 1983 actions."  *Save Our Valley*

*v. Sound Transit*, 335 F.3d 932, 936 (9th Cir. 2003) (*citing Gonzaga Univ. v. Doe*,

536 U.S. 273, 285 (2002); *Blessing v. Freestone*, 520 U.S. 329, 340 (1997)).  In

determining that a statute creates a right enforceable under § 1983, the court must

find that:

> (1) "Congress . . . intended that the provision in question benefit the plaintiff"; (2) the plaintiff has "demonstrate[d] that the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence"; and (3) "the statute . . . unambiguously impose[s] a binding obligation on the States," such that "the provision giving rise to the asserted right . . . [is] couched in mandatory, rather than precatory terms."

*Ball v. Rodgers*, 492 F.3d 1094, 1104 (9th Cir. 2007) (*quoting Blessing*, 520 U.S. at 340).

Under the first prong, "it is rights, not the broader or vaguer 'benefits' or 'interests,' that may be enforced under the authority of [§ 1983.]" *Gonzaga*, 536 U.S. at 283. In determining whether Congress intended to create a federal right, the court may find evidence of intent to create an enforceable right "in a statute's language as well as in its overarching structure." *Ball*, 492 F.3d at 1105 (*citing Gonzaga*, 536 U.S. at 286). Specifically, the statute must be "'phrased in terms of the persons benefitted . . . . with an *unmistakable* focus on the benefitted class.'" *Id.* (*quoting Gonzaga*, 536 U.S. at 284) (other citation and quotation signals omitted). Some phrases, such as "No person shall . . .", may clearly establish an individual right, and "statutory language less direct . . . must be supported by other indicia so unambiguous that we are left without any doubt that Congress intended to create an individual, enforceable right remediable under

§ 1983." *Sanchez v. Johnson*, 416 F.3d 1051, 1058 (9th Cir. 2005).

For example, the Ninth Circuit in *Ball* analyzed Medicaid's free choice provisions, 42 U.S.C. §§ 1396n(c)(2) and (d)(2), and found they created enforceable rights because both sections specifically used the word "individuals" and were "constructed in such a way as to stress that these 'individuals' have . . . explicitly identified rights." *Ball*, 492 F.3d at 1107. *Ball's* decision conformed with others finding enforceable rights because "the statutes all prescribed rights owed to 'individuals' or 'eligible individuals,' explicitly identified as such." *Id.* at 1108 (discussing *Watson v. Weeks*, 436 F.3d 1152, 1155 (9th Cir. 2006), and other circuits' caselaw). *Ball* further supported its conclusion by distinguishing the statutes at issue with others that do not create an enforceable right, such as in *Blessing*, *Gonzaga*, and *Sanchez*. The statutes in those cases differed from *Ball* "in that they do not mention the service recipients, or refer to them in the aggregate, or refer to them in the context of describing a more general institutional policy or practice." *Id.* at 1109.

Applying these principles to the statutes upon which Plaintiff relies, the court finds that neither 42 U.S.C. § 1396u-2(a)(1)(A)(ii) nor 42 U.S.C.

§ 1396u-2(b)(5) creates an enforceable right.[4]

        *a.    42 U.S.C. § 1396u-2(a)(1)(A)(ii)*

The Complaint alleges that Defendants' restriction of the RFP award

to only two entities violates 42 U.S.C. § 1396u-2(a)(1)(A)(ii).  Compl. ¶ 27.

Under the heading "State option to use managed care," § 1396u-

2(a)(1)(A)(ii) provides the following:

> Subject to the succeeding provisions of this section, and
> notwithstanding paragraph (1), (10)(B), or (23)(A) of section
> 1396a(a) of this title, a State . . .
>
> > (ii) may restrict the number of provider agreements with
> > managed care entities under the State plan if such
> > restriction does not substantially impair access to
> > services.

From the plain words used, § 1396u-2(a)(1)(A)(ii) focuses on when a

State may limit the number of managed care provider agreements, and does not

identify, much less even refer, to any particular individuals to be benefitted.

---

[4] The court assumes that the other statutes upon which Plaintiff relies -- 42 U.S.C.
§ 1396a(a)(10) and 42 U.S.C. § 1396u-2(a)(2)(A) -- create rights enforceable through 42 U.S.C.
§ 1983.  *See Ball v. Rodgers*, 492 F.3d 1094, 1103 (9th Cir. 2007) (stating that whether a statute
creates a right that can be enforced through § 1983 "may be assumed without being decided"
(citation and quotation signals omitted)).

    In their Supplemental Briefs, Defendants additionally argue that Plaintiff, as an advocacy
organization, does not have standing to bring a cause of action premised on violations of either of
these statutes, *see* Defs.' Supplemental Br. 6-9; and Plaintiff argues that it has associational
standing.  *See* Pl.'s Supplemental Br. 2-10.  The court declines to address these additional
arguments on the grounds that the court did not ask the parties to raise these issues in their
supplemental briefing, supplemental briefing is not the appropriate time to raise new issues, and
the court dismisses Plaintiff's claims for other reasons.

While "express use of the term 'individuals' (or 'persons' or similar terms) is not essential to finding a right for § 1983 purposes," *Ball*, 492 F.3d at 1108, the court finds no evidence -- whether in the statute or otherwise -- that indicates an "*unmistakable* focus on the benefitted class."  *See Gonzaga*, 536 U.S. at 284 (citation and quotation signal omitted).  While program recipients will certainly benefit from having access to services, it does not appear that Congress intended to create an enforceable right through this statute.

This conclusion is fully supported by comparing § 1396u-2(a)(1)(A)(ii) to Medicaid's equal access provision, § 1396a(a)(30)(A),[5] which *Sanchez* found did not create an enforceable right.  Because § 1396a(a)(30)(A) referred to Medicaid recipients only "in the aggregate, as members of 'the general population in the geographic area,'" *Sanchez* found that this language did not create an enforceable right.  *Sanchez*, 416 F.3d at 1059; *see also id.* ("A statutory provision that refers to the individual only in the context of

---

[5] 42 U.S.C. § 1396a(a)(30)(A) provides that a state plan for medical assistance must:

> provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan (including but not limited to utilization review plans as provided for in section 1396b(i)(4) of this title) as may be necessary to safeguard against unnecessary utilization of such care and services and to assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area.

describing the necessity of developing state-wide policies and procedures does not reflect a clear Congressional intent to create a private right of action."). *Sanchez* reasoned that "[t]he statute speaks not of any individual's right but of the State's obligation to develop 'methods and procedures' for providing services generally." *Id.* This "broad and diffuse language" indicated that the statute is "concerned with overall methodology rather than conferring individually enforceable rights on Medicaid recipients." *Id.* at 1059-60.

Like § 1396a(30)(A) in *Sanchez*, § 1396u-2(a)(1)(A)(ii) does not speak of any individual's rights, but rather the State's obligation not to restrict the number of provider agreements to the point that access to service is impaired. Indeed, § 1396u-2(a)(1)(A)(ii) is even one step further removed than *Sanchez* -- it does not even mention *any* beneficiary, whether as an individual, or as a general group. Further, the language of § 1396u-2(a)(1)(A)(ii) is broad and nonspecific, supporting the conclusion that it is directed to a general goal and policy, as opposed to conferring individually enforceable rights on Medicaid recipients.

Plaintiff argues that § 1396u-2(a)(1)(A)(ii) provides an enforceable right because § 1396u-2(a)(1)(A)(i), the preceding sub-part, refers to an "individual" in providing that a State "may require an individual who is eligible for medical assistance under the State plan . . . to enroll with a managed care

entity."[6]  Pl.'s Supplemental Br. 13.  Contrary to Plaintiff's arguments, the

inclusion of the word "individual" does not create a cause of action in this section,

much less § 1396u-2(a)(1)(A)(ii).  This language by itself is not "phrased in terms

of the persons benefitted . . . with an *unmistakable* focus on the benefitted class."

*See Gonzaga*, 536 U.S. at 284 (citation and quotation signal omitted).  Rather,

read as a whole, § 1396u-2(a) addresses a state's ability to *limit* the choice of

providers that program participants might otherwise have, and does not create

rights actionable through 42 U.S.C. § 1983.  Accordingly, the court finds that

---

[6]  In full, 42 U.S.C. § 1396u-2(a)(1)(A) provides as follows:
(a) State option to use managed care
(1) Use of medicaid managed care organizations and primary care case managers
(A) In general
Subject to the succeeding provisions of this section, and notwithstanding paragraph (1), (10)(B), or (23)(A) of section 1396a(a) of this title, a State--
(i) may require an individual who is eligible for medical assistance under the State plan under this subchapter to enroll with a managed care entity as a condition of receiving such assistance (and, with respect to assistance furnished by or under arrangements with such entity, to receive such assistance through the entity), if--
(I) the entity and the contract with the State meet the applicable requirements of this section and section 1396b(m) or section 1396d(t) of this title, and
(II) the requirements described in the succeeding paragraphs of this subsection are met; and
(ii) may restrict the number of provider agreements with managed care entities under the State plan if such restriction does not substantially impair access to services.

§ 1396u-2(a)(1)(A)(ii) does not confer a right to Medicaid beneficiaries (or Plaintiff) to sue under 42 U.S.C. § 1983 for an alleged failure of the QExA program to be limited to two contracting entities, and DISMISSES Plaintiff's claim premised on a violation of § 1396u-2(a)(1)(A)(ii).

       *b.*       *42 U.S.C. § 1396u-2(b)(5)*

The Complaint asserts that Defendants violated 42 U.S.C. § 1396u-2(b)(5) and its implementing regulation, 42 C.F.R. § 438.207, by entering into contracts with Evercare and Ohana Health even though these entities did not have their provider networks in place at the time the contracts were awarded.  Compl. ¶¶ 45, 64; Pl.'s Opp'n 21.

As an initial matter, "agency regulations cannot independently create rights enforceable through § 1983."  *Save Our Valley*, 335 F.3d at 939.  Rather, the statute itself must confer "'a specific right upon the plaintiff, and a valid regulation merely further defines or fleshes out the content of that right . . . .'"  *Id.* at 941 (*quoting Harris v. James*, 127 F.3d 993, 1009 (11th Cir. 1997)).  The court therefore begins its analysis with § 1396u-2(b)(5), not its implementing regulation.

Under the title "beneficiary protections," 42 U.S.C. § 1396u-2(b)(5) provides the following:

Each medicaid managed care organization shall provide the State and the Secretary with adequate assurances (in a time and manner determined by the Secretary) that the organization, with respect to a service area, has the capacity to serve the expected enrollment in such service area, including assurances that the organization --

(A) offers an appropriate range of services and access to preventive and primary care services for the population expected to be enrolled in such service area, and

(B) maintains a sufficient number, mix, and geographic distribution of providers of services.

Like § 1396u-2(a)(1)(A)(ii), § 1396u-2(b)(5) does not specifically discuss or mention any individual beneficiaries.  Further, the language of § 1396u-2(b)(5) is broad and nonspecific; determining whether "adequate assurances" have been given "would involve making policy decisions for which this court has little expertise and even less authority."  *Sanchez*, 416 F.3d at 1060.  The only evidence arguably supporting a contrary conclusion is that § 1396u-2(b)(5) falls under the heading "beneficiary protections."[7]  This heading, standing alone, does not provide the necessary "indicia so unambiguous that [the court is] left without any doubt that Congress intended to create an individual, enforceable right remediable

---

[7] "[T]he title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute."  *Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998) (citation and quotation signals omitted); *see also Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 128 S. Ct. 2326 (2008) ("Although a subchapter heading cannot substitute for the operative text of the statute, statutory titles and section headings are tools available for the resolution of doubt about the meaning of a statute.").

under § 1983." *Id.* at 1058.  Rather, the overall language of the statute does not indicate an intent to confer any specific, enforceable rights to individuals.[8]  The court therefore finds that Plaintiff may not bring a cause of action premised on violation of § 1396u-2(b)(5).[9]  Accordingly, the court DISMISSES Plaintiff's claim premised on a violation of § 1396u-2(b)(5).

### 2.  *Ripeness of Plaintiff's Claim Premised on Violation of 42 U.S.C. § 1396a(a)(10)*

The Complaint alleges that by awarding contracts to entities that did not have established networks of providers, Defendants violated 42 U.S.C. § 1396a(a)(10), which requires states to make medical assistance available to eligible Medicaid ABD individuals.  Compl. ¶¶ 41, 64.  Defendants argue that this

---

[8]  The relevant regulation, 42 C.F.R. § 438.207, does not aid Plaintiff.  This regulation requires the state to give assurances that it has the capacity to serve the expected enrollment "at the time it enters into a contract with the state."  Because this regulation creates an entirely new obligation, it does not "merely further define[] or flesh[] out the content" of the statutory right. *See Save Our Valley v. Sound Transit*, 335 F.3d 932, 941 (9th Cir. 2003).  Although the regulation may be a valid interpretation of the statute's "providing assurances" requirement, it goes well beyond the *content* of the right to assurances.  *See Harris v. James*, 127 F.3d 993, 1012 (11th Cir. 1997).

[9]  Plaintiff provides no substantive discussion of whether 42 U.S.C. § 1396u-2(b)(5) creates a right of action, and instead relies on Defendants' Supplemental Brief, which stated that this section "arguably creates an individually enforceable right in a Medicaid-eligible disabled child."  Defs.' Supplemental  Br. 3.  As is apparent from Defendants' Supplemental Brief as a whole and Defendants' Supplemental Reply, this statement is a typographical error, and should refer to 42 U.S.C. § 1396u-2(a)(2)(A).  *See* Defs.' Supplemental Reply 3 n.3.

claim is not ripe for review because services have not begun.  Defs.' Opp'n 14-18.

The court agrees.

It is well settled that "'injunctive and declaratory judgment remedies are discretionary, and courts traditionally have been reluctant to apply them to administrative determinations unless these arise in the context of a controversy "ripe" for judicial resolution.'"  *Assoc. of Am. Med. Coll. v. United States*, 217 F.3d 770, 779 (9th Cir. 2000) (*quoting Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967), *overruled on other grounds, Califano v. Sanders*, 430 U.S. 99 (1977)). The ripeness doctrine prevents "the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."  *Abbott Labs.*, 387 U.S. at 148-49.  The court must assess "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration."  *Id.* at 149.  Based on the following, the court finds that Plaintiff's claim premised on violation of 42 U.S.C. § 1396a(a)(10) is not ripe for review.

///

///

a.      *Fitness for review*

"Generally, agency action is fit for review if the issues presented are purely legal and the regulation at issue is a final agency action." *Anchorage v. United States*, 980 F.2d 1320, 1323 (9th Cir. 1992) (citations omitted). "The core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992). The court should look to "whether the administrative action is a definitive statement of an agency's position; whether the action has a direct and immediate effect on the complaining parties; whether the action has the status of law; and whether the action requires immediate compliance with its terms." *Assoc. of Am. Med. Coll.*, 217 F.3d at 780.

The thrust of Plaintiff's allegation is that Evercare and Ohana Health will not provide required medical services *in the future*, and that Defendants have therefore violated § 1396a(a)(10) by entering into contracts with them. This claim relies on two assumptions: (1) that Evercare and Ohana Health will not be able to provide adequate medical services to the ABD population at the time service is set to commence, and (2) that on the day services commence, Defendants will rubber-stamp Evercare and Ohana Health's programs even though they cannot provide adequate services. Both of these assumptions are mere speculation about what

may (or may not) occur, and the court is not in a position to make factual

determinations at to what might happen in the future.  Further, applying the factors

of *Association of American Medical Colleges*, (1) there is no definitive statement

that Defendants would require ABD individuals to receive care from Evercare and

Ohana Health if their programs are not adequate, (2) there is no direct and

immediate effect on ABD individuals, (3) there is no requirement for immediate

compliance with the RFP because service is not set to begin until November 1,

2008 or later, and (4) Defendants' selection of Evercare and Ohana Health does

not have the status of law.

Plaintiff argues that this claim is ripe because by awarding the

contracts to Evercare and Ohana Health, Defendants have already committed to an

inadequate plan and will find them adequate "no matter what" to "validate their

prior commitment" to these entities.  Pl.'s Opp'n 9.  This argument confirms that

Plaintiff's claim is not fit for review -- Plaintiff cannot base a claim on the

assumption that Defendants will take some action in the future based on positions

they have taken in the past.

     *b.*     *Hardship to the parties*

The consideration of hardship "does not mean just anything that

makes life harder; it means hardship of a legal kind, or something that imposes a

significant practical harm upon the plaintiff." *Natural Res. Def. Council v. Abraham*, 388 F.3d 701, 706 (9th Cir. 2004). "Courts typically read the *Abbott Laboratories* rule to apply where regulations require changes in present conduct or threat of future sanctions." *Assoc. of Am. Med. Coll.*, 217 F.3d at 783. Because services are not set to commence for several months, there is no current, practical harm to Plaintiff and/or the ABD population. Rather, services for the ABD population will continue as usual until the change. Accordingly, if there is any hardship to Plaintiff at this time, it is minimal at best.

In opposition, Plaintiff argues "'that it is incurring, and will continue to incur increased costs in assisting members and non members and their providers with access complaints and counseling them on their rights and how to pursue remedies to inadequate or inaccessible care.'"[10] Pl.'s Opp'n 6 (*quoting* Compl. ¶ 20). The court rejects this argument. Mere worry and concern is not the type of "hardship" contemplated in this analysis, and Plaintiff cites no support for the proposition that concern about future events creates a cause of action.

---

[10] Plaintiff also argues that the court should reject Defendants' ripeness argument because Defendants failed to allege any particular hardship they will suffer, and they failed to provide any factual support that ABD beneficiaries will suffer no hardship. Pl.'s Opp'n 13-14. Plaintiff misunderstands the hardship standard articulated above, and cites no support for the proposition that Defendants must affirmatively show their hardship. On a Rule 12(b)(1) motion, Plaintiff has the burden of proving this court's jurisdiction. *Tosco Corp. v. Cmty. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001).

Because the court finds that Plaintiff's claim is not fit for review and the hardship of the parties does not weigh in favor of ripeness, the court DISMISSES Plaintiff's claim premised on violation of § 1396a(a)(10) as unripe.[11]

### 3.   Whether Defendants May Require Individuals Under the Age of 19 to Enroll in the QExA Program

The Complaint alleges that 42 U.S.C. § 1396u-2(a)(2)(A) precludes Defendants from requiring individuals under the age of 19 to participate in the QExA program.  Defendants argue that they can and did receive a waiver to include special needs children in the QExA program, such that Plaintiff's claim must be dismissed.  The court agrees.

In general, a state plan for medical assistance must provide eligible individuals the freedom of choice in receiving medical assistance from any institution or agency.  42 U.S.C. § 1396a(a)(23).  Because managed care limits a recipient's choices for medical assistance, various provisions of Federal Medicaid law provide for waivers to this requirement.  Relevant here, Defendants are implementing the QExA program pursuant to 42 U.S.C. § 1315, governing "experimental, pilot, or demonstration project[s]."  Section 1315(a) specifically

---

[11]   For similar reasons, Plaintiff's claim that Defendants violated 42 U.S.C. § 1396u-2(a)(1)(A)(ii) by restricting the RFP award to two entities is not ripe.  This claim relies on the assumption that Evercare and Ohana Health will not be able to provide sufficient access to service.  Because no services have begun, this conclusion is speculative at best.

allows the Secretary to waive compliance with the requirements of § 1396a, and

thus the freedom of choice provision, "to the extent and for the period he finds

necessary to enable such State or States to carry out such project . . . ."  In this

case, Defendants received a waiver for the QExA program from complying with

the freedom of choice provision in § 1396a.  *See* Defs.' Ex. 2, at 1-6.  This waiver,

on its face, applies to all individuals, whether adults or children.

Plaintiff bases its claim not on the freedom of choice provision of 42

U.S.C. § 1396a(a)(23), but rather 42 U.S.C. § 1396u-2.  Section 1396u-2 provides

"provisions relating to managed care," and unlike § 1315 (addressing

demonstration projects), allows a State to implement a managed care program

without applying for a waiver of the freedom of choice provision.  Specifically,

§ 1396u-2(a)(1)(A)(i) allows a State to "require an individual who is eligible for

medical assistance under the State plan under this subchapter to enroll with a

managed care entity as a condition of receiving such assistance . . . ."  Section

1396u-2(a)(2)(A), however, restricts this general rule by providing that "a State

may not require under paragraph (1) the enrollment in a managed care entity of an

individual under 19 years of age" who has specified special needs.

With this background, the court turns to the issue presented --

whether 42 U.S.C. § 1396u-2(a)(2)(A) applies to a demonstration program

established pursuant to 42 U.S.C. § 1315(a) that had received a waiver of the freedom of choice provision contained in 42 U.S.C. § 1396a.  After careful review, the court concludes that § 1396u-2(a)(2)(A) does not override a waiver of the freedom of choice provision received pursuant to § 1315(a).

As an initial matter, the managed care program created by § 1396u-2(a)(1)(A) is separate and distinct from the demonstration program created by § 1315(a).  Nothing in § 1396u-2 -- which permits states to implement managed care programs outside of a demonstration project -- suggests that its age restriction is also applicable to a waiver of the freedom of choice provision as part of a § 1315 demonstration project.  Regulations confirm this conclusion.  Addressing § 1396u-2, 42 C.F.R. § 438.50(a) provides that "[a] State plan that requires Medicaid recipients to enroll in managed care entities must comply with the provisions of this section, except when the State imposes the requirement -- (1) As part of a demonstration project under section 1115 of the Act."  Further, in proposing this regulation, the Department of Health and Human Services explained that "[w]hile State agencies are prohibited from enrolling [special needs children] under the State plan option, a State agency may . . . use . . . section 1115 demonstration authority to mandate enrollment for these individuals in a managed care system."  66 Fed. Reg. 43614, 43626 (Aug. 20, 2001); *see also* 67 Fed. Reg.

40989, 41073 (June 14, 2002) (stating that the "waiver authorities in section 1915(b) and 1115 remain in effect. . . .  We believe granting these waivers reflects the intent of Congress which did not modify or limit the authority in either of these waiver provisions.").

In opposition, Plaintiff argues that the plain language of § 1396u-2(a)(2)(A) exempts special needs children from being placed involuntarily in managed care.  The court rejects this construction as contrary to the structure of these two statutes and the guidance provided in the regulations.  Further, accepting Plaintiff's construction would mean that the states could never require any individuals listed in § 1396u-2(a)(2)(A) -- including not only special needs children, but also Medicare beneficiaries and individuals eligible for benefits under subchapter XVI -- to participate in managed care.  Such result would be contrary to the above statutory framework and regulations, and lead to a potentially absurd result.[12]  Accordingly, the court finds that Plaintiff has failed to state a claim pursuant to § 1396u-2(a)(2)(A), and DISMISSES this claim.

In sum, the court DISMISSES Count I of the Complaint.

---

[12] Plaintiff also cites *Portland Adventist Medical Center v. Thompson*, 399 F.3d 1091, 1098 (9th Cir. 2005), and *Beno v. Shalala*, 30 F.3d 1057, 1068 (9th Cir. 1994), as showing that there are limits on the ability of the Secretary to waive compliance with other provisions in Federal Medicaid law.  Pl.'s Br. 18-19.  Because these cases do not address the specific issue presented, *i.e.*, how to construe the requirements of 42 U.S.C. § 1396u-2(a)(2)(A) with 42 U.S.C. § 1315, the court finds that they neither add to nor run counter to the court's analysis.

**B.      Count II: Violation of the ADA**

Title II of the ADA prohibits a public entity from discriminating against qualified individuals based on disability.  Specifically, it provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

The Complaint alleges that Defendants have violated the ADA by "proceeding with a waiver program which clearly is not a 'comprehensive, effectively working plan,' showing a 'genuine, comprehensive and reasonable' commitment to non-discriminatory provision of all benefits and services to the Medicaid-eligible blind and disabled," and "implementing a program that will not assure access to medical services is available with reasonable promptness, or guarantee availability to blind and disabled recipients equal to that available to the general population, or in amount, duration, or scope to that available to any other individual, and will not meet the required standards for medical assistance."[13]

_____

[13]  The Complaint recites several provisions of the ADA, but never specifically identifies or alleges that Defendants violate any of them.  The court therefore focuses on Plaintiff's actual assertions of violations, and does not assume that Plaintiff *meant* to allege violations of these ADA provisions.  Plaintiff also asserted in its Opposition various violations of the Rehabilitation Act.  Because the Complaint included no such allegations, the court does not consider these

(continued...)

Compl. ¶ 69.  Defendants argue that they are not required to provide a

"comprehensive, effectively working plan," and the other allegations should be

dismissed for the same reasons as Plaintiff's claims of violations of Federal

Medicaid law.  The court agrees.

Plaintiff bases its assertion that Defendants must demonstrate they

have a "comprehensive, effectively working plan," showing a "genuine,

comprehensive and reasonable" commitment to the QExA program, on *Arc of*

*Washington State, Inc. v. Braddock*, 427 F.3d 615, 619 (9th Cir. 2005).  *See*

Compl. ¶ 50.  *Arc of Washington State* did not address issues similar to those

raised in the Complaint, but rather analyzed whether Washington's limitation on

the number of individuals who may participate in noninstitutional care violates the

ADA's mandate that public entities administer services "in the most integrated

setting appropriate to the needs" of qualified individuals.  *Arc of Washington*

*State*, 427 F.3d at 618.  Relying on *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581

(1999), the court noted that "a state could avoid having to modify its waiver

program if it 'were to demonstrate that it had a comprehensive, effectively

working plan for placing qualified persons with mental disabilities in less

---

[13](...continued)
arguments.

restrictive settings.'"  *Id.* (*quoting Olmstead*, 527 U.S. at 605).  The court further found that the record showed that Washington's "commitment to deinstitutionalization is . . . 'genuine, comprehensive and reasonable.'"  *Id.* at 621 (*quoting Sanchez*, 416 F.3d at 1067).

      The holdings and rationales of both *Arc of Washington State* and *Olmstead* are necessarily limited to the issue presented, *i.e.*, whether a state's program regarding institutionalization meets the ADA's integration mandate. There is nothing to support applying phrases cherry-picked from these cases to Defendants' broad plan that is not directed to institutionalization of qualified individuals.  These cases simply do not hold that Plaintiff may state a violation of the ADA on the basis that a Medicaid plan does not provide a "comprehensive, effectively working plan" showing a "genuine, comprehensive and reasonable" commitment.[14]  Indeed, *Olmstead* noted the limitation of its holding, and specifically stated that it did *not* hold that "the ADA imposes on the States a 'standard of care' for whatever medical services they render, or that the ADA

---

[14]  While this and other circuits have applied the "comprehensive, effectively working plan" language in context of integrating qualified persons with mental disabilities, the court could find no cases applying this standard outside this context.  *See Frederick L. v. Dep't of Public Welfare of Pa.*, 422 F.3d 151, 154-55 (3d Cir. 2005) (applying *Olmstead* in action by mental health patients regarding their institutionalization); *Bruggeman ex rel. Bruggeman v. Blagojevich*, 324 F.3d 906, 913 (7th Cir. 2003) (directing district court on remand to apply *Olmstead* to claims by developmentally disabled residents).

requires States to 'provide a certain level of benefits to individuals with disabilities.'" *Olmstead*, 527 U.S. at 603 n.14.  Rather, *Olmstead* held that "States must adhere to the ADA's nondiscrimination requirement with regard to the services they in fact provide." *Id.*  Accordingly, the court rejects Plaintiff's ADA claim for Defendants' alleged failure to demonstrate they have a "comprehensive, effectively working plan," showing a "genuine, comprehensive and reasonable" commitment to the QExA program.

The court next turns to Plaintiff's remaining allegations -- that the program will not assure that access to medical services is available with reasonable promptness, guarantee availability to disabled recipients equal to that available to the general population, and will not meet the required standards for medical assistance.  These allegations mirror Plaintiff's claim that Defendants violated Federal Medicaid law, 42 U.S.C. § 1396a(a)(10), for failure to make medical assistance available to eligible Medicaid ABD individuals.  For the same reasons articulated above regarding Plaintiff's claim for violation of 42 U.S.C. § 1396a(a)(10), these allegations are not ripe.  Because the program has not started, it is pure speculation whether it will not meet the requirements of Federal Medicaid law and the ADA, and there is no present harm to Plaintiff.  The court therefore DISMISSES Count II of the Complaint.

**C.      Count III: Violation of HRS § 432E-3**

Count III alleges that Ohana Health and Evercare "cannot demonstrate that they will comply with Hawaii's access to care and providers mandate, HRS § 432E-3," and that Plaintiff is therefore entitled to a declaration that Defendants' contracts with them are void.  Compl. ¶¶ 69, 76.  Count III likewise fails to state a claim.

First, it does not appear that Plaintiff has actually alleged a violation of HRS § 432E-3.  HRS § 432E-3 provides the following:

> A managed care plan shall demonstrate to the commissioner[15] upon request that its plan:
>
> (1) Makes benefits available and accessible to each enrollee electing the managed care plan in the defined service area with reasonable promptness and in a manner which promotes continuity in the provision of health care services;
> (2) Provides access to sufficient numbers and types of providers to ensure that all covered services will be accessible without unreasonable delay;
> . . . .

According to its plain language, HRS § 432E-3 requires a managed care plan to demonstrate that it provides appropriate access to care and providers, upon request by the commissioner.  *See also* Pl.'s Opp'n 29 (asserting that "any person may bring a declaratory action under HRS § 432E-3 seeking the Insurance

---

[15] "'Commissioner' means the insurance commissioner."  HRS § 432E-1.

Commissioner's determination that a plan fails to meet the access standards for managed care plans"). To the extent a plaintiff *can* allege a cause of action for violation of HRS § 432E-3 (given that such demonstration is only "upon request"), the commissioner is not a party to this action, and there are no allegations in the Complaint that Plaintiff asked the commissioner to request this information, or that the commissioner refused to make such request. On this basis alone, this claim must be dismissed.

Second, even if Plaintiff could state a claim for violation of HRS § 432E-3, this claim is unripe. The parties concur that HRS § 432E-3 sets forth requirements that are "virtually identical to those contained in federal law." *See* Pl.'s Opp'n 30. Specifically, Plaintiff asserts that Defendants violate § 432E-3 because Evercare and Ohana Health cannot demonstrate that they will provide reasonable continuity of care and access to services. Compl. ¶ 74. For the same reasons articulated above for Plaintiff's claim for violation of 42 U.S.C. § 1396a(a)(10), this claim is not ripe. The court will not assume that the QExA program will not meet these standards when it has not yet begun, and there is no

hardship to Plaintiff in withholding court consideration.  For these reasons, the

court DISMISSES Count III.[16]

## D.    Leave to Amend

Federal Rule of Civil Procedure Rule 15(a) provides that the court

"should freely give leave [to amend a pleading] when justice so requires."  "A

district court, however, does not abuse its discretion in denying leave to amend

where amendment would be futile."  *Flowers v. First Hawaiian Bank*, 295 F.3d

966, 976 (9th Cir. 2002); *see also Sisseton-Wahpeton Sioux Tribe v. United States*,

90 F.3d 351, 356 (9th Cir. 1996) (affirming the district court's denial of leave to

amend "[b]ecause the proposed claim would be redundant and futile").

While the court dismisses each of Plaintiff's claims for reasons that

cannot be overcome through amendment, the court nonetheless will provide

Plaintiff the opportunity to address whether it believes it could amend the

Complaint to state a cognizable claim.  *See Manzarek v. St. Paul Fire & Marine

Ins. Co.*, 519 F.3d 1025, 1034 (9th Cir. 2008) (finding abuse of discretion where

the district court dismissed complaint without leave to amend where it never

allowed plaintiffs to explain how they could amend if allowed to do so).

---

[16]  Because the court dismisses Count III for the reasons stated above, the court does not
address whether HRS § 432E-3 creates a private cause of action.

Accordingly, the court orders Plaintiff to SHOW CAUSE why it should be granted leave to amend the Complaint, by September 19, 2008.  Plaintiff's Response shall be no longer than 15 pages, or 4500 words.  Failure to file a Response by this date will result in automatic dismissal of this action.  No Response by Defendants is necessary unless ordered by the court.

## V.  <u>CONCLUSION</u>

Based on the above, the court DISMISSES the Complaint, and orders Plaintiff to SHOW CAUSE why it should be granted leave to amend the Complaint.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, September 4, 2008.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Haw. Coal. for Health v. State of Hawaii et al.*, Civ. No. 08-00277 JMS/BMK, Order: (1) Granting Defendants' Motion to Dismiss; and (2) Ordering Plaintiff to Show Cause Why it Should Be Granted Leave to Amend Complaint